631 So.2d 185 (1994)
Willie Rome JOHNSON,
v.
STATE of Mississippi.
No. 91-KA-0431.
Supreme Court of Mississippi.
January 27, 1994.
*186 C. Emanuel Smith, Smith & Cotton, Tupelo, for appellant.
Michael C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and SULLIVAN and SMITH, JJ.
SMITH, Justice, for the Court:
Willie Rome Johnson was convicted in the Clay County Circuit Court on charges that he sold cocaine to an undercover policeman for $75.00. Johnson was found to be an habitual offender and sentenced to thirty years in the custody of the Mississippi Department of Corrections.
Johnson raises the following issues in this appeal:
I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING A MOTION FOR CONTINUANCE WHERE THE DEFENDANT DESIRED TO EMPLOY COUNSEL OF HIS OWN CHOOSING FOR PURPOSES OF THE TRIAL, TRIAL COUNSEL HAD NOT ADEQUATELY PREPARED FOR TRIAL NOR HAD HE SUFFICIENT TIME TO PREPARE FOR TRIAL AND THE STATE HAD FAILED TO PRODUCE THE IDENTITY OF ANY EYEWITNESS TO THE EVENTS FORMING THE BASIS OF THE INDICTMENT AND CHARGES AGAINST THE DEFENDANT UNTIL THE TIME OF TRIAL
II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO INQUIRE INTO THE BIAS OR PREJUDICE OF JUROR NO. 4, CUNNINGHAM PRIOR TO ACCEPTING A CHALLENGE OF SAID JUROR FOR CAUSE.
III. WHETHER THE TRIAL COURT MAINTAINED AN ADEQUATE RECORD IN THE SENTENCING TRIAL AND, IF SO, WHETHER THE VERDICT IN THE SENTENCING TRIAL WAS SUPPORTED BY EVIDENCE IN THE RECORD.
Appointed counsel for Johnson made three motions to the court requesting a continuance. The first motion for continuance alleged that Johnson desired to retain Emanuel *187 Smith as his attorney. In the motion, filed the day before trial, appointed counsel stated that Johnson refused to communicate with him and told him that Smith had been retained to represent him. Attached to the motion was an affidavit from Smith that he could only accept the representation if the case were continued to the next term of court. The second motion for continuance alleged that the trial counsel had not adequately prepared for trial or had sufficient time to prepare. The third motion for continuance alleged that the identity of an eyewitness had not been produced by the State. All of the motions for continuance were denied.
The court concluded that the first motion was for the purpose of delay and that Johnson's counsel had adequate time to prepare for trial. The witness whose identity was not known to the State prior to trial was subpoenaed and interviewed by Johnson's attorney but was not called as a witness.
Venireman Cunningham stated during voir dire that he was related by marriage to Johnson and had lived next door to Johnson. The court allowed a challenge for cause against Johnson.
Johnson argues that in the sentencing hearing there was a "technical non-compliance with the habitual offender statute" because no mention was made of the conviction in the hearing. This allegation is not supported by the record. Johnson also complains that the court failed to require the court reporter to record the arguments of counsel on sentencing. No request or objection was made to have this argument recorded and transcribed.
Johnson has not challenged the sufficiency of the evidence to support his conviction or his status as an habitual offender. The evidence is overwhelming. Johnson has not raised any claim warranting reversal. The trial court did not abuse its discretion in denying the motions for continuance. There was no error in excusing the potential juror who knew and was related to Johnson. The sentencing hearing was properly conducted. This Court affirms Johnson's conviction and sentence.

THE FACTS
On May 4, 1989, Bruce Andress, an undercover narcotics officer, purchased a small bag of cocaine from Johnson in Johnson's office in the rear of a pool hall in West Point. Johnson was paid $75. Andress signalled other officers to assist in the arrest after the sale. The officers also recovered an additional container of cocaine which Johnson tried to destroy by dumping in a bucket of Purex bleach in the office. During the sales transaction and arrest there was another man present in the office. Officer Andress did not know the man and the man was allowed to leave without being arrested or questioned by the police officers.

THE DISCUSSION

DID THE TRIAL COURT COMMIT ERROR IN OVERRULING JOHNSON'S MOTIONS FOR CONTINUANCE?
Although Johnson's primary argument is that the trial court erred in overruling his motions for continuance, he first complains that he "was denied effective assistance of counsel by having no counsel at arraignment or during the first 170 days there after."
Johnson was arraigned on October 13, 1989 and was represented by Rufus Ward, one of the public defenders. At the request of the court, Ward was purportedly standing in for William Catledge. The court was under the mistaken impression that Catledge was representing Johnson. Catledge had represented Johnson at a probation revocation hearing held after Johnson's arrest. It is unclear why Catledge did not continue representing Johnson. On December 19, 1989, Circuit Judge Lee Howard conducted a docket setting and determined that Catledge did not represent Johnson and appointed Louis Coleman, a public defender, to represent Johnson. On December 21, 1989, Coleman filed a motion for discovery on Johnson's behalf.
Johnson's contention that he was not represented at the arraignment is not supported by the record. It does appear that Johnson was not thereafter represented by counsel until December 19, 1989. Under the *188 Mississippi Constitution, the right to counsel "attaches once the proceedings reach the accusatory stage," which is "earlier in the day than does the federal right." Williamson v. State, 512 So.2d 868, 876 (Miss. 1987).
Rule 1.05 of the Uniform Criminal Rules of Circuit Court Practice provides:
Counsel shall be appointed no later than the time of initial appearance, and once appointed, counsel shall continue to represent the defendant until permitted to withdraw by proper order of the court.
Such appointed counsel shall have free access to the defendant who shall have process to compel the attendance of witnesses in his favor.
The defendant shall have such representation available at every critical stage of the proceeding against him where a substantial right may be affected.
Even so, the arraignment proceeding as practiced in Mississippi does not constitute a critical stage whereby the presence of counsel would be required under the Sixth Amendment of the United States Constitution or the Mississippi Constitution. Williamson, 512 So.2d at 875. Unless Johnson can show some adverse effect upon his ability to conduct a defense, the denial of the right to counsel at this early stage does not constitute reversible error. Id. at 876. As stated in Wright v. State, 512 So.2d 679, 681 (Miss. 1987), the denial of the entitlement to timely appointed counsel "will result in reversal of a subsequent conviction, however, only where it is shown that the accused experienced some untoward consequence flowing directly from denial of counsel." Johnson has not made such a showing that he experienced any adverse effect or untoward consequence. During the time Johnson was entitled to but without counsel there is no indication that the State took advantage of the situation or that any further proceedings were conducted.
Johnson next raises the issue of his three motions for continuance which were overruled by the lower court. The first motion concerned Johnson's desire to substitute counsel and related matters.
On April 2, 1990, Coleman met with Johnson at the Clay County Jail. Johnson had until that date been at the Mississippi State Penitentiary at Parchman. Johnson refused to talk to Coleman because Johnson's family was in the process of hiring another attorney, Emanuel Smith. The next day, April 3, Coleman was advised by Smith that, while arrangements had been made for him to represent Johnson, he could only represent Johnson if the case were set for the next week during the same term to allow him time to prepare. On April 4, the original date set for trial, Coleman moved for a preliminary hearing and was granted a continuance until April 11, 1990, the next week during the same term of court. On April 9, Coleman was advised by Smith that he would be unable to represent Johnson due to scheduling conflicts. Smith had prepared a motion for continuance which he sent to Coleman. Smith also sent an affidavit stating that he could only represent Johnson if the case were continued to the next term of court. On April 10, Coleman filed a Motion for Continuance and Relief on Related Matters in which he set out the course of his dealings with Johnson and Smith, including as exhibits to the motion the affidavit and motion sent him by Smith. Coleman also stated in the motion that there was a material witness present at the sale who he was unable to identify and locate because Johnson refused to communicate with him.
On April 11, 1990, Coleman filed a second motion for continuance asserting the same grounds raised in the first motion and adding that the "problems have been amplified and compounded by actions of the State" which prevented Coleman from being able to properly use trial preparation time. Coleman stated to the court that he had a very crowded docket for the week and had been unable to spend as much time preparing for the case due to an unexpected change in another trial.
The lower court, in denying the first two motions, found, in part, as follows:
The testimony before the court is that the defendant met with Mr. Coleman on April the 2nd and 3rd, and on his own election, decided not to discuss the case with his counsel. So if there's any problem it's because he created the problem and now he wants to take advantage of the problem *189 he created ... The court finds that the  there is no competent evidence before the court by Mr. Smith; that the court feels that the defendant, Mr. Johnson, is seeking a continuance and substitute counsel for purposes of delay; that this is an age-old tactic to want to change lawyers at the last moment to avoid being put to trial, and the court does make that finding. The court further is of the opinion that no motion filed by Mr. Smith to substitute himself for counsel is before the court and the court would feel that the better procedure would be to have, if Mr. Smith had, in fact, received two thousand dollars, that he would, pursuant to the rules of the court, make application to this court to be substituted as counsel of record, and there's no such application. .. .
Johnson notes in his brief that the procedure for substitution of counsel is governed by Rule 1.11 of the Uniform Circuit Court Rules, which provides that an attorney will not be allowed to withdraw as counsel without permission of the court. Johnson also cites Miss. Code Ann. § 99-15-29 (1972), the statute on continuances, and notes that "the trial court in the exercise of sound judicial discretion could properly have denied the requested continuance." Section 99-15-29 states: "A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom."
Johnson's third motion for continuance came after the State's direct examination of Bruce Andress. During his testimony Andress stated that when he went into the office to purchase the cocaine from Johnson, there was another man sitting on a couch in the office. Johnson's counsel requested a continuance stating that the identity of the black male who was a witness to the transaction had not been disclosed to the defense. The State noted that the fact that another person was present was in the officer's report which defense counsel had received. When the trial judge suggested that Johnson should know the identity of the man, Coleman responded, "My client is not talking to me." It was later stipulated that Andress testified at the preliminary hearing that he did not know the name of the man on the couch. Johnson's counsel then stated that Johnson said he did not know the man's name either. The next witness after Andress, Charles Johnson, an agent with the West Point Narcotics Unit, testified that he was present in the office after the deal was completed and the man on the couch was Bobo Randale. After Charles Johnson's testimony, Coleman renewed his request for a continuance. The court overruled the motion for continuance and allowed Johnson to request a subpoena instanter since the identity of the potential witness was revealed. After the State had rested its case and the court had conducted a hearing advising Johnson of his right to testify, the court announced the following:
All right, I want the record to also reflect that the witness, Bobo Randale, has been served and is present, and the defense counsel has interviewed that witness, and that witness is available to be called at the instance of the defendant if it so desires. The court makes that finding.
The defense rested without calling any witnesses. In closing arguments, the court sustained the State's objection to Johnson's counsel arguing that the State should have called Randale as a witness.
As acknowledged by Johnson, the decision to grant or deny a continuance is one left to the sound discretion of the trial court. Wallace v. State, 607 So.2d 1184, 1190 (Miss. 1992); Morris v. State, 595 So.2d 840, 844 (Miss. 1991); Fisher v. State, 532 So.2d 992, 998 (Miss. 1988). Unless manifest injustice appears to have resulted from the denial of the continuance, this Court should not reverse. Hatcher v. Fleeman, 617 So.2d 634, 639 (Miss. 1993).
Based on the findings of the court, there was no error or abuse of discretion in denying the motions for continuance. In particular, attorney Smith's failure to file with the court a motion to be substituted as counsel and to affirmatively state that he would be or was Johnson's attorney supports the court's decision. Smith's affidavit only outlined the conditions under which he would accept the representation of Johnson.
*190 The failure to disclose the identity of the witness to the transaction is also no basis for granting a continuance. Although Johnson argues that this was a discovery violation, the portions of Rule 4.06 cited by Johnson relate to the State's continuing duty to disclose exculpatory material. As is apparent, Johnson's decision not to call the witness after interviewing him is clear indication that the testimony would not have been exculpatory. As noted by the State, it is unlikely that Johnson would allow the man to sit in on the drug sale if he were not someone he knew and trusted.
Miss. Code Ann. § 99-15-29 states further:
On all applications for a continuance the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or documents that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the absent documents, or presence of the absent witness, as the case may be, stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done. The court may grant or deny a continuance, in its discretion, and may of its own motion cross-examine the party making the affidavit. The attorneys for the other side may also cross-examine and may introduce evidence of affidavit or otherwise for the purpose of showing to the court that a continuance should be denied. No application for a continuance shall be considered in the absence of the party making the affidavit, unless his absence be accounted for to the satisfaction of the court. A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom.
In the present case, Johnson failed to make the requisite factual showing of what the "absent witness" would have testified to or his own efforts to identify and find this witness earlier. This Court has consistently held that a trial court will not be held in error in denying a continuance where the defendant fails to follow the procedure outlined by statute and caselaw. See Pinson v. State, 518 So.2d 1220, 1222 (Miss. 1988); Pool v. State, 483 So.2d 331, 336 (Miss. 1986). The record does not show that Johnson was in any way prejudiced by the delay in identifying the witness.
In each instance where a problem arose, Johnson, in some way caused or contributed to the cause of the problem. Johnson refused to talk to his appointed counsel even after it was clear that other counsel would not be available to him. This Court has twice quoted favorably the following language from Shaw v. United States, 403 F.2d 528, 529 (8th Cir.1968):
A defendant cannot base a claim of inadequate representation upon his refusal to cooperate with appointed counsel. Such a doctrine would lead to absurd results.
Corley v. State, 536 So.2d 1314, 1318 (Miss. 1988); Evans v. State, 273 So.2d 495, 498 (Miss. 1973).
Johnson has failed to show that the denial of any of his motions for continuance was an abuse of discretion and, more importantly, that any injustice resulted. This assignment of error cannot be the basis of any reversal.

DID THE TRIAL COURT COMMIT ERROR IN DISMISSING VENIREMAN CUNNINGHAM FOR CAUSE?
During voir dire when asked, "Are any of you related by blood or marriage to the Defendant, Willie Rome Johnson?" Mr. Cunningham raised his hand and told the court his wife was Johnson's second cousin. Further questions were asked:
Q. Okay, does Mr. Johnson come over to your house and visit with you some?
A. Well, it's been  been a while ago. He used to live right next door to me.
Q. But you are related through your wife?
A. Right.
Later, the court excused Mr. Cunningham for cause over the objection of Johnson's counsel.
Miss. Code Ann. § 13-5-79 (1972) provides as follows:
Any person, otherwise competent, who will make oath that he is impartial in the case, shall be competent as a juror in any *191 criminal case, notwithstanding the fact that he has an impression or an opinion as to the guilt or innocence of the accused, if it appear to the satisfaction of the court that he has no bias or feeling or prejudice in the case, and no desire to reach any result in it, except to that which the evidence may conduct. Any juror shall be excluded, however, if the court be of opinion that he cannot try the case impartially, and the exclusion shall not be assignable for error.
Johnson's contention is that the court must make an inquiry into a juror's bias or prejudice prior to excusing that juror. The statute only requires that the court be of the opinion that the person cannot try the case impartially and does not specify any procedure. The trial court stated that it was of the opinion that Cunningham's relationship to Johnson would affect his ability to sit on the case.
Caselaw supports a literal interpretation of Section 13-5-79 that if the court is of the opinion a juror cannot try a case impartially, the juror will be excluded and that exclusion shall not be assignable as error. Gilliard v. State, 428 So.2d 576, 580-581 (Miss. 1983), and cases cited therein. This Court has also stated that a defendant does not have a vested right to any particular juror but only the right to be tried by a fair and impartial jury. Id. at 581. In Gilliard, the prospective juror was also a second cousin by marriage of the defendant and this Court found no error in excluding the juror.
This assignment of error is without merit.

DID THE TRIAL COURT COMMIT ERROR IN ITS HANDLING OF THE SENTENCING PHASE OF JOHNSON'S TRIAL?
Johnson argues that there was technical non-compliance with the habitual offender statute in his sentencing. The statute in question, Miss. Code Ann. § 99-19-81 (1972), states:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Johnson's argument is as follows:
In the instant case, the Defendant was indicted on a felony charge of sale of cocaine at the time he was indicted for being a habitual offender. The Defendant was found guilty of sale of cocaine following that indictment. However, no mention of that conviction was made in the habitual offender trial. This material element of the offense was not proven nor mentioned during the sentencing trial. Clearly, the Court could have taken judicial notice of this fact, but such notice does not appear of record.
This error was not raised in the lower court and consequently is procedurally barred. Pinkney v. State, 538 So.2d 329, 338 (Miss. 1988); Cannaday v. State, 455 So.2d 713, 719 (Miss. 1984).
In addition, the trial court stated, "Mr. Johnson, the jury has found you guilty of the crime of the sale of cocaine. Now it becomes my responsibility to sentence you according to the law." This would seem to be adequate for the judicial notice that Johnson suggests in his brief.
In Seely v. State, 451 So.2d 213, 215 (Miss. 1984) this Court stated:
The state has the same burden of proof as to the habitual offender portion of the indictment as it has on the principal charge. The defendant also has the same rights at both stages of trial. There appears to be some tendency to routinely allow the state to produce some documentation of prior offenses and for the trial court to perfunctorily find the defendant an habitual offender, then routinely pass out the sentence mandated by § 99-19-81. We wish to leave no doubt that the requirement of a bifurcated trial means a full two-phase trial prior to any finding that a defendant is an habitual offender and subject to enhanced *192 punishment. Further, a complete record of the second part of the trial must be made.
Johnson also contends that the trial court erred in omitting any record of the arguments of counsel during the sentencing trial. In addition to failing to request that the argument be included or in failing to object, Johnson has not shown that he has suffered any prejudice as a result.
Johnson concedes that procedural errors are "not major errors of substance," but nonetheless argues that they "should be subject to strict scrutiny." It is unclear exactly what Johnson is seeking or hopes to accomplish under this assignment of error. Any error that was committed was minimal and certainly not deserving of any notice by this Court.
This assignment of error is without merit.

CONCLUSION
Johnson has not raised any assignment of error touching on the substance of his conviction of sale of cocaine. The evidence was overwhelming that he was guilty of the crime. The continuances that Johnson was denied did not result in any injustice. The lower court did not abuse its discretion in overruling these motions. Johnson was the maker of many of his problems. The lower court committed no error in excusing for cause a relative of Johnson's. Johnson has not shown any reversible error in his sentencing. His conviction and sentence are affirmed.
CONVICTION OF SALE OF COCAINE AS AN HABITUAL OFFENDER  30 YEARS IN MISSISSIPPI DEPARTMENT OF CORRECTIONS AND SUCH SENTENCE SHALL NOT BE REDUCED OR SUSPENDED NOR BE ELIGIBLE FOR PAROLE AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.