# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-01256-SCT

*WILLIE E. NORRIS AND JASON NORRIS a/k/a JASON SHAWN NORRIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/97 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | FRANKLIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | K. MAXWELL GRAVES, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  BILLY L. GORE |
| DISTRICT ATTORNEY: | RONNIE L. HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 04/15/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/6/99 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Appellants Willie E. Norris and Jason Norris ("the Norrises") were convicted of simple assault on a law enforcement officer in the Circuit Court of Franklin County, Mississippi. Circuit Judge Forrest A. Johnson, Jr., sentenced the pair to three years in the custody of the Mississippi Department of Corrections, but ordered that after serving six months in the Franklin County Jail, the remaining two and a half years be suspended and served on post-release supervision. Feeling aggrieved, the Norrises appeal to this Court and assign the following as error:

> **I. Whether the trial judge abused his discretion in overruling the Appellants' motion for a new trial grounded, in part, on the claim that the jury verdict was against the overwhelming weight of the evidence.**

> **II. Whether the trial judge abused his discretion in handling a discovery violation presented by the State.**

¶2. Because the latter assignment of error requires reversal, we find it unnecessary to reach the first issue.

## DISCUSSION OF THE LAW

**II. Whether the trial judge abused his discretion in handling a discovery violation presented by the State.**

¶3. This Court has set forth the following procedures for trial courts to follow when faced with a discovery violation:

> 1) Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.

> 2) If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.

> 3) If the defendant does request a continuance, the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.

*Cole v. State*, 525 So. 2d 365, 367-68 (Miss. 1987) (*citing Box v. State*, 427 So. 2d 19, 23-24 (Miss. 1983)(Robertson, J., specially concurring); *See also Ramos v. State*, 710 So. 2d 380, 385 (Miss. 1998); *West v. State*, 553 So. 2d 8, 18 (Miss.1989).

¶4. At 6:00 p.m. the day before trial, the State produced, for the first time, the statements of approximately 25 witnesses, which according to the defense attorney, was approximately 60 to 90 pages. The next day the Norrises requested a continuance so that they could have time to review the newly disclosed statements. The trial judge, after an extensive hearing, denied the motion, though he did find that a discovery violation had taken place.

¶5. Due to the lateness of the disclosures, the Norrises were unable to avail themselves of the opportunity to conduct any meaningful analysis of the statements. Statements were taken from six of the defense witnesses and eight of the witnesses called by the State. The importance of this opportunity is plain, as this was a factually intensive case, i.e. "he said, she said," with the outcome of the trial dependent upon the jury's opinion as to the credibility of the witnesses.

¶6. In spite of the great care taken by the trial judge to diminish the prejudicial effects brought on by the State's belated disclosure, the Norrises were ambushed and surprised by the violation of a discovery rule, which is simple and clear on its face. The night before a jury trial is a very busy time for even a well-prepared lawyer under the best of circumstances. Procedurally, the Norrises did all that they were required to do when confronted with a possible discovery violation. *See Houston v. State*, 531 So. 2d 598, 611-12 (Miss. 1988). Under *Box* and its progeny, the defendant is not required to show prejudice, nor is he required to demonstrate what, if any, efforts have been made in order to rebut the late discovery. Neither our cases nor our rules require defendants to demonstrate prejudice where there has been a gross discovery violation by the State, as presented here.

¶7. The discovery rules apply to both the defendant and the State. The essential purpose of Rule 9.04 of the Uniform Rules of Circuit and County Court Practice is the elimination of trial by ambush and surprise. *Robinson v. State*, 508 So. 2d 1067, 1070 (Miss. 1987). "Disclosure is the hallmark of fairness and the quest for justice that should be the goal of the criminal justice system." *Id*.

¶8. This Court has continually admonished the State to "`...make available to attorneys for defendants all . . . material[s]'." *Ramos*, 710 So. 2d at 386 (*quoting* **Hentz v. State**, 489 So. 2d 1386, 1388 (Miss. 1986)).[1] What was stated in *Ramos* and *Dotson* bears reiterating, "`[n]ow, we take this opportunity to reinforce that which we stated in *Hentz* with a simple message to the bench and bar. <u>Read</u> *Hentz*! <u>Apply</u> *Hentz*!'" *Ramos*, 710 So. 2d at 386 (*quoting* **Dotson v. State**, 593 So. 2d 7, 12 (Miss. 1991)).

## CONCLUSION

¶9. Due to the fact that the Norrises were provided at least 60 pages of documents comprising statements of 25 witnesses at 6:00 p.m. the day before trial, the lower court should have granted at least a short continuance in order to allow the Norrises time to adequately prepare. Because the trial judge abused his discretion in not granting a continuance, we reverse the judgment below and remand this case for a new trial.

¶10. **REVERSED AND REMANDED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS AND COBB, JJ., CONCUR. PRATHER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

### PRATHER, CHIEF JUSTICE, DISSENTING:

¶11. In my view, the majority's holding on the discovery issue is in conflict with this Court's recent decision of *Ramos v. State*, 710 So. 2d 380, 385 (Miss. 1998), and I must respectfully dissent. In *Ramos*, Justice Roberts wrote for a unanimous Court that "(i)f the defendant does request a continuance, the State may choose to proceed with trial and forego using the undisclosed evidence." This Court's holding in *Ramos* was based on Rule 9.04(i)(3) of the Uniform Rules of Circuit and County Court Practice, which provides that, in the case of discovery violations, the court "shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence." See also *Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994).

¶12. In the present case, the State elected to forego using the belatedly disclosed evidence at trial, but the majority finds the trial judge to have abused his discretion in denying a continuance. The trial judge clearly acted within his discretion under Rule 9.04(i)(3) and *Ramos* in declining to grant a continuance under the facts of the present case, and the majority cites no basis on which the facts of the present case might be distinguished from those in *Ramos*. Whether a continuance should be granted or denied is within the sound discretion of the trial court. *Johnson v. State*, 631 So. 2d 185, 189 (Miss. 1994); *Wallace v. State*, 607 So. 2d 1184, 1190 (Miss. 1992); *Morris v. State*, 595 So. 2d 840, 844 (Miss. 1991). Only when manifest injustice appears to have resulted from the decision to deny the continuance will this Court reverse on that basis. *Johnson*, 631 So. 2d at 189; *Hatcher v. Fleeman*, 617 So. 2d 634, 639 (Miss. 1993).

¶13. A brief summary of the facts relating to the present issue is in order. In November, 1996, the district attorney (DA) asked the Department of Public Safety to conduct an independent investigation of the alleged assault on Deputy Middleton. The DA recognized the possible conflicts of interests which might arise in the context of an investigation by the local law enforcement personnel, and DPS Sergeant Jeff Roberts was accordingly assigned to investigate the matter. Roberts' investigation produced transcribed statements from approximately twenty-five people, but none of these statements were disclosed to the Norrises' attorney until six p.m. on the day prior to the trial for simple assault.

¶14. It is apparent that the present case does not involve the non-disclosure of evidence, but rather the belated disclosure of evidence. When the issue was brought to the attention of the trial judge, he ruled that a discovery violation had taken place, and the State did not and does not contest this fact. The defense requested that a continuance be granted, but the trial judge, recognizing that a venire of prospective jurors had already been seated, elected instead to proceed to trial.

¶15. In addition to the fact that the prosecution did not seek to utilize the statements in the Roberts report at trial, the trial court took great care to limit any prejudicial effects which the untimely disclosure of the Roberts' report might have had on the Norrises' defense. The trial judge ruled as follows:

> The Court: I'll say this. If a fairly detailed statement was given to him and another statement was given, I don't see any problem. If its got some inconsistencies that can be used for cross-examination or what have you. What I'm going to be concerned with if there was a witness that there was no basic details given to the defense until yesterday where the state had this. That's what I'm going to need to know.

> Mr. Ward: No.

> The Court: Well, I'm going to do it like this. ... Every State's witness when you get ready to put them on the stand, I'm going to want to see a copy of what was provided to the defendant initially and what was just provided yesterday. ... I may very well - - if I find that the information wasn't provided, I may prohibit the State from using that witness on your case in chief. ... I am going to further deny the continuance, but I will under the rules I can prohibit the State from using the witness if I find there's some unfairness here.

It is thus apparent that the trial judge made specific inquiries as to the nature of the information that was timely provided to the defense and compared it to the information which was belatedly disclosed in the Roberts' report. The trial judge then analyzed the information to determine whether the late disclosure had prejudiced the defense and issued rulings accordingly.

¶16. The State notes that eight of the witnesses interviewed by Roberts did in fact testify for the State.[2] The State argues that:

> The names of each of these witnesses - save perhaps for Sandra Causey, a rebuttal witness, were provided to the defense in Rule 9.04 discovery. None - no, not one - of the statements given by these witnesses to Sergeant Roberts were introduced into evidence. The Norrises, who have had the statements since the day prior to trial, have yet to point to anything exculpatory contained in the statements; rather, everything contained therein is inculpatory. Nor have the Norrises pointed to anything in the witnesses' statements transcribed by Roberts that is materially inconsistent with their

testimony at trial or with the content of their earlier statements.

I agree with the State that the Norrises are unable to demonstrate any manner in which the belated disclosure of the material in the Roberts report served to prejudice their defense at trial.

¶17. One specific instance of alleged prejudice raised by the Norrises is extremely innocuous in nature. The Norrises argue that reversible error did occur when, in violation of the trial judge's ruling, the prosecutor mentioned the Roberts investigation during the cross-examination of Willie Norris. The Norrises argue in their brief that:

> The following questions and answers in the cross-examination of Willie E. Norris, the Defendant, by the State, it is submitted, constituted reversible error and grounds for a new trial, to wit:
>
> Q: Okay. Do you remember giving a statement prior to today ?
>
> A: It's been so long since I give one, yeah.
>
> Q: On November the 26th of 1996 to Mr. Jeff Roberts with the Mississippi Highway Patrol.
>
> A: Yeah.

In my view, the mere mention of the Roberts investigation before the jury and of the fact that Willie Norris had given a prior statement to Roberts can not be said to have prejudiced the Norrises' defense. This question by the prosecution contains nothing of an incriminating nature, and it is highly unlikely that this statement influenced the jury's verdict against the Norrises in any respect.

¶18. The present case involves two diametrically opposed versions of the events which transpired in the parking lot outside of the sheriff's office. The present case, in essence, boils down to the jury's evaluation of the credibility of the Norris family members' testimony as opposed to that of Deputy Middleton and the other witnesses for the prosecution. The statements of prosecution witnesses in the Roberts report are of an incriminating rather than exculpatory nature, and there is no indication that the statements contained in the report, even if timely disclosed, would have assisted the defense in any meaningful sense. It is apparent that the statements in the Roberts report constitute cumulative testimony which was fully consistent with the testimony elicited at trial.

¶19. The trial judge recognized that the prosecution had made a discovery violation, albeit an unintentional one, and he took great care to protect the rights of the defendants while at the same time proceeding with trial. The prosecution did not introduce the evidence in the Roberts reports, and URCCC Rule 9.04(i)(3) expressly grants the trial court the discretion to proceed with trial under these circumstances. I find no basis for concluding that the trial court's decision to deny the continuance resulted in a "manifest injustice" under the facts of the present case. *Johnson*, 631 So. 2d at 189. The conviction for simple assault should be affirmed, and I must accordingly dissent.

1. *See also Barnes v. State*, 460 So. 2d 126 (Miss. 1984); *Harris v. State*, 446 So. 2d 585 (Miss. 1984); *Morris v. State*, 436 So. 2d 1381 (Miss. 1983).

2. The State notes that six of the Roberts interviewees cited by the Norrises in their brief were actually defense witnesses. The State further notes that counsel for the Norrises had represented to the judge at trial

that they had "no complaint about" the six statements which Roberts took from his own witnesses. It is also apparent that twelve of the twenty-five witnesses interviewed by Roberts were not actually called by the State to testify at trial.